# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

LEANN TERRANCE, as Personal Representative
for the Estate of EVERETT L. TERRANCE, Deceased

     Plaintiff,

                               Case No: 99-CV-74433-DT

v.                             HON:  Lawrence P. Zatkoff

NORTHVILLE REGIONAL PSYCHIATRIC HOSPITAL,
MICHIGAN DEPARTMENT OF MENTAL HEALTH,
H. BLANDA, M.D., ARDESHIR EMANI SAID, M.D.,
O.R. LEE, M.D., DR. SADASIVAN, M.D, SHIRLEY OWENS, R.N.,
B. FANNING, O.T., DR. NAIR, DR. KIM, DR. PAN, and
DR. ALMASI, Jointly and Severally,

     Defendants.

FILED
2003 APR -4 P 4:56
U.S. DIST COURT
EASTERN DIST MICH DETROIT

---

| | |
|---|---|
| GEOFFREY NELS FIEGER  (P30441) | MARGARET A. NELSON (P30442) |
| TODD J. WEGLARZ  (P48035) | Attorney for Defendants |
| Attorneys for Plaintiff | Assistant Attorney General |
| FIEGER, FIEGER, KENNEY & JOHNSON, P.C. | Mental Health Division |
| 19390 W. Ten Mile Rd. | P.O. Box 30736 |
| Southfield, MI  48075 | 6520 Mercantile Way #1 |
| (248) 355-5555 | Lansing, MI 48910 |
| | (517) 373-6434 |

---

## THIRD AMENDED COMPLAINT
## AND RE-DEMAND FOR JURY TRIAL

A civil action between these parties or other parties arising out of the
transaction or occurrence alleged in the complaint has been previously filed
in this court, where it was given docket number 99-CV-74433-DT and is
assigned to Judge Lawrence Zatkoff. The action remains pending.

Todd J. Weglarz

    NOW COMES Plaintiff, LEANN TERRANCE, as Personal Representative for the

Estate of EVERETT L. TERRANCE, Deceased, by and through her attorneys, FIEGER,

FIEGER, KENNEY & JOHNSON, P.C., and for his Second Amended Complaint against the

above-named Defendants states as follows:



1. That at all times relevant hereto, Plaintiff, LEANN TERRANCE, as Personal Representative of the Estate of EVERETT L. TERRANCE, Deceased, was and is a resident of the City of Dearborn Heights, County of Wayne, State of Michigan.

2. That at all times relevant hereto, Plaintiff's decedent, EVERETT TERRANCE, Deceased, was a resident of the City of Dearborn Heights, County of Wayne, State of Michigan.

3. That at all times relevant hereto, Defendant NORTHVILLE REGIONAL PSYCHIATRIC HOSPITAL (hereinafter referred to as "NORTHVILLE HOSPITAL"), was and is a Michigan Mental Health Facility doing business in the County of Wayne, State of Michigan, and is duly organized and existing under and by virtue of the laws of the State of Michigan.

4. That at all times relevant hereto, Defendant NORTHVILLE HOSPITAL was and is funded, maintained, and operated by the MICHIGAN DEPARTMENT OF MENTAL HEALTH, performing a proprietary function and operating as a revenue and profit making entity.

5. That at all times relevant hereto, Defendant MICHIGAN DEPARTMENT OF MENTAL HEALTH (hereinafter referred to as "MICHIGAN"), did fund, maintain and operate the Defendant NORTHVILLE HOSPITAL as a proprietary function which operated as a revenue and profit-making entity, and did business in the County of Wayne, State of Michigan.

6. That at all times relevant hereto, Defendant ARDESHIR EMANI SAID, M.D. (hereinafter referred to as "SAID"), was engaged in the practice of medicine, specializing, upon information and belief, in the field of internal medicine, in the County of Wayne, State of Michigan.

7.     That at all times relevant hereto, Defendant O.R. LEE (hereinafter referred to as "LEE"), was engaged in the practice of medicine, specializing, upon information and belief, in the field of psychiatry, in the County of Wayne, State of Michigan.

8.     That at all times relevant hereto, Defendant DR. SADASIVAN, M.D. (hereinafter referred to as "SADASIVAN"), was engaged in the practice of medicine, specializing, upon information and belief, in the field of psychiatry, in the County of Wayne, State of Michigan.

9.     That at all times relevant hereto, Defendant SHIRLEY OWENS, R.N. (hereinafter referred to as "OWENS"), was engaged in the practice of medicine, specializing, upon information and belief, in the field of nursing, in the County of Wayne, State of Michigan.

10.     That at all times relevant hereto, Defendant B. FANNING, O.T. (hereinafter referred to as "FANNING"), was engaged in the practice of medicine, specializing, upon information and belief, in the field of occupational therapy, in the County of Wayne, State of Michigan.

11.     That at all times relevant hereto, Defendant DR. NAIR (hereinafter referred to as "NAIR"), was engaged in the practice of medicine in the County of Wayne, State of Michigan.

12.     That at all times relevant hereto, Defendant DR. KIM (hereinafter referred to as "KIM"), was engaged in the practice of medicine in the County of Wayne, State of Michigan.

13.     That at all times relevant hereto, Defendant DR. PAN (hereinafter referred to as "PAN"), was engaged in the practice of medicine in the County of Wayne, State of Michigan.

14. That at all times relevant hereto, Defendant DR. ALMASI (hereinafter referred to as "ALMASI"), was engaged in the practice of medicine in the County of Wayne, State of Michigan.

15. That at all times relevant hereto, Defendant NORTHVILLE HOSPITAL was the actual, apparent, and/or ostensible principal, agent, servant and/or employee of Defendant MICHIGAN, and was at all times relevant hereto, acting within the course and scope of its agency and/or employment when the medical malpractice/negligence/gross negligence/wanton and willful misconduct alleged herein was committed, thereby imposing vicarious liability upon the Defendant MICHIGAN.

16. That at all times relevant hereto, Defendants BLANDA, SAID, LEE, SADASIVAN, OWENS, FANNING, NAIR, KIM, PAN and/or ALMASI, were the actual, apparent, and/or ostensible principals, agents, servants, and/or employees of Defendant NORTHVILLE HOSPITAL, and were at all times relevant hereto, acting within the course and scope of their agency and/or employment when the medical malpractice/negligence/gross negligence/wanton and willful misconduct alleged herein was committed, thereby imposing vicarious liability upon the Defendant NORTHVILLE HOSPITAL and/or MICHIGAN.

17. That on June 19, 1995, Plaintiff's decedent was involuntarily admitted to Defendant NORTHVILLE HOSPITAL and given a provisional diagnosis of schizophrenia.

18. That upon said admission, Plaintiff's Decedent was already known to have the cardiac risk factors of hypertension, diabetes, obesity and hyperlipidemia.

19. That upon said admission, Plaintiff's decedent complained of occasional substernal chest pain brought on with exertion.

4

FIEGER, FIEGER, KENNY & JOHNSON • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE 258-355-5555 • FAX 258-355-5158

20.      That upon said admission, an admitting physical was conducted, including an EKG which showed right axis deviation, incomplete right bundle branch block, and poor R-wave progression in leads V1-V4.

21.      That upon said admission, an admitting exam was conducted which detected bibasilar rales and infiltrates in both lung bases consistent with pneumonia.

22.      That during Plaintiff's decedent's confinement at Defendant NORTHVILLE HOSPITAL, several individuals were responsible for the overall care and treatment of Plaintiff's decedent, including Defendant SAID (admitting/attending physician); Defendant LEE (treating psychiatrist); Defendant SADASIVAN (treating psychiatrist); Defendant OWENS (primary treating therapist/registered nurse); and Defendant FANNING (treating occupational therapist).

23.      That while confined at Defendant NORTHVILLE HOSPITAL, Plaintiff's decedent was given various medications, including high dose lithium carbonate, which is known to cause diabetes insipidus with inordinate thirst and dehydration, and Haldol, which, when combined with lithium, can cause lethargy, confusion, weakness and fever.

24.      That on July 6, 1995, while confined at Defendant NORTHVILLE HOSPITAL, Plaintiff's Decedent wandered from the activity area and escaped from same, prompting the Safety Department to apprehend Plaintiff's decedent and return him to the proper ward. Thereafter, Plaintiff's decedent was placed on escape alert.

25.      That on July 13, 1995, while confined at Defendant NORTHVILLE HOSPITAL, Plaintiff's decedent complained of chest pain, prompting treating physicians to order an EKG stat, the tracings to which were consistent with the prior abnormal EKG done upon admission.

26.      That on July 17, 1995, and July 19, 1995, Plaintiff's decedent had been given

extra doses of Haldol via injection, as well as a very large dose (100mg) of long-acting depot Haldol given by injection on July 17, 1995.

27.     That on July 17, 1995, Plaintiff's decedent's daily dose of Haldol had also been doubled to 10mg bid, and was again doubled on July 19, 1995, to 20mg bid.

28.     That on July 19, 1995, one month following admission, Plaintiff's decedent was noted to be very confused and disorganized with erratic mood swings, and also noted to be drinking too much water.

29.     That on July 20, 1995, Plaintiff's decedent was observed to be "irritable and hostile all day".

30.     That on July 25, 1995, Plaintiff's decedent was noted to have a "medication reaction" characterized by stiffness and sweating, prompting Defendant LEE to continue the antipsychotic drugs, as well as supplementing same with Cogentin, or benztropine mesylate.

31.     That on July 28, 1995, it was documented that Plaintiff's decedent "was not attending off-ward programming this week due to decompensation.  Having auditory hallucinations".

32.     That Plaintiff's decedent remained on Haldol, lithium carbonate, and Cogentin, through July 31, 1995, on which date it was extremely hot and the temperature was greater than 95 degrees Fahrenheit, with 90% humidity.

33.     That as early as June 9, 1995, the Chief of Psychiatric Services from the State of Michigan Department of Mental Health submitted a memorandum to Defendant NORTHVILLE warning and advising all medical personnel and facility employees that patients receiving psycho tropic medications and patients with cardiovascular diseases were highly susceptible to dehydration, heat exhaustion, and heat stroke during spells of hot weather.

6

34.     That the above described memorandum further instructed that when the temperature reaches 90 degrees or higher, patients with cardiovascular disease should be advised to avoid strenuous exercise.

35.     That the above described memorandum further instructed that when the temperature reaches 80 degrees of higher, patients should be offered rest periods, loose fitting cotton clothing, fans, extra showers, clean sheets, and extra fluids.

36.     That at least as early as July 31, 1995, maintenance was being done on the building's steam pipes, which included removing the insulation therefrom, causing the facility to be extremely hot, and causing many patients to require additional  hydration because of the excessive heat.

·37.     That the defective condition of the building as described above was known to by the representatives of Defendant NORTHVILLE HOSPITAL.

38.     That on July 31, 1995, the nurse's progress notes indicate Plaintiff's Decedent remained indoors and on his ward the entire day until, at approximately 2:00 p.m., he was observed to be confused, stumbling around, sweating profusely, and having an axillary temperature of 103.5.

39.     That on July 31, 1995, the Medical Summary and Death Note report that Plaintiff's Decedent was outside the premises prior to coming back into the premises just prior to being observed as confused, stumbling around, and sweating profusely.

40.     That on July 31, 1995, the EMT's reported that plaintiff's Decedent was out in the hot sun performing various physical activities, causing him to become agitated and confused, and subsequently collapsing with an axillary temperature of 103.

41.     That in the afternoon on July 31, 1995, Plaintiff's Decedent's mother received a phone call from Defendant NORTHVILLE HOSPITAL, and was advised that hospital staff found their son passed out in the outdoor courtyard.

42.     That after observing Plaintiff's Decedent to have an axillary temperature of 103.5, at approximately 2:00 pm, the nurse called for medical doctors STAT.

43.     That one half hour later after calling for a medical doctor, Defendant SAID arrived at the ward at approximately 2:30 p.m., at which time he assessed the patient.

44.     That Defendant SAID attempted to procure a rectal temperature but could not because "the equipment for a rectal temperature had been removed from the ward".

45.     That Defendant SAID then called for a medical emergency, to which the medical emergency team arrived, including Defendants NAIR, KIM, PAN, and ALMASI, as well as calling for EMS.

46.     That Defendant SAID and the emergency medical team attempted to perform an ice water enema to employ emergency core temperature cooling, but could not for reason said equipment could not be located.

47.     That at approximately 2:41 p.m., the EMS did arrive on the scene and then attempted to resuscitate Plaintiff's decedent, but to no avail.

48.     Shortly thereafter, on said date, Plaintiff's decedent did die as a result of hyperthermia, which was confirmed by the autopsy performed on the next day.

49.     That the autopsy report for the above death cites the cause of death to be hyperthermia, caused by exposure, Haldol and Benztropine.

50.     That the amount in controversy herein exceeds TEN THOUSAND DOLLARS ($10,000.00), and is otherwise subject to the jurisdiction of this Court.

## COUNT I

### MEDICAL MALPRACTICE, NEGLIGENCE, GROSS NEGLIGENCE AND/OR WILLFUL AND WANTON MISCONDUCT OF ALL DEFENDANTS

51.     Plaintiff hereby realleges each and every allegation contained in Paragraphs 1 through 50 as if fully set forth herein.

52.     That at all times relevant hereto, Defendants NORTHVILLE HOSPITAL, MICHIGAN, BLANDA, SAID, LEE, SADASIVAN, OWENS, FANNING, NAIR, KIM, PAN, and/or ALMASI, individually, and/or through their authorized agents, were engaged in the practice of medicine in the County of Wayne, State of Michigan, and held themselves out to the public in general and Plaintiff's Decedent in particular, as skilled and competent medical facilities, medical doctors, and/or medical personnel, capable of properly and skillfully treating, caring for and providing medical services to the public in general and Plaintiff's decedent in particular.

53.     That at all times relevant hereto, Defendants NORTHVILLE HOSPITAL, MICHIGAN, BLANDA, SAID, LEE, SADASIVAN, OWENS, FANNING, NAIR, KIM, PAN, and/or ALMASI, individually and/or through their authorized agents, undertook and had the duty of providing Plaintiff's decedent with the services of a competent and licensed staff of doctors, surgeons, nurses and other employees to treat Plaintiff's decedent's condition, and to render competent advice and assistance in that care and treatment in accordance with the standards of the community.

54.     That at all times relevant hereto, Defendants NORTHVILLE HOSPITAL, MICHIGAN, BLANDA, SAID, LEE, SADASIVAN, OWENS, FANNING, NAIR, KIM, PAN, and/or ALMASI, individually, and/or through their authorized agents, servants and/or

9

employees, breached their respective duties and obligations to Plaintiff's decedent by acting in a negligent manner, and/or in variance with acceptable standards of medical practice in this community, and are negligent and/or professionally negligent in the following particulars, which include, but are not limited to:

a.  Prescribing both Haldol and Benztropine together when said combination therapy is known to subject a patient at risk for hyperthermia;

b.  Permitting Plaintiff's decedent to engage in strenuous physical activity outside on a day in excess of 95°F for a period of several hours while on Haldol, and Benztropine;

c.  Failing to keep Plaintiff's decedent in a cool area during the hottest hours of the day;

d.  Failing to properly supervise Plaintiff's decedent while in the premises and outside of said premises;

e.  Failing to timely treat Plaintiff's decedent's hyperthermia, especially when it took over 1/2 hour to respond to the nurse's STAT call;

f.  Failing to timely summon EMS as to provide timely and appropriate treatment of Plaintiff's decedent's hyperthermia;

g.  Failing to order a complete cardiac work-up in light of knowing decedent's cardiac risk factors of hypertension, diabetes, obesity, hyperlipidemia, complaints of chest pain, and abnormal EKG's;

h.  Failing to properly diagnose and treat decedent's pneumonia/pneumonitis and pulmonary infiltrates;

i.  Failing to timely and properly evaluate and adjust decedent's medication regimen when same was causing inordinate thirst and dehydration;

j.  Failing to timely and properly monitor decedent for early evidence of neurological toxicity while on Haldol and Lithium;

k.  Failing to timely discontinue decedent's combination therapy of Haldol and Lithium;

l.  Failing to properly monitor decedent for GI symptoms, heat intolerance or fever while on Benztropine and Haldol;

FIEGER, FIEGER, KENNEY & JOHNSON • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

m.   Allowing decedent to remain on Haldol and Benztropine in extreme heat and humidity, thereby increasing the likelihood for heat stroke or hyperthermia;

n.   Failing to have the necessary equipment available to employ emergency core temperature cooling, and thereby failing to employ necessary core temperature cooling during decedent's emergency;

o.   Failing to administer bromocriptine, or Parlodel, to counteract the excessive Haldol given to decedent;

p.   Failing to prescribe and administer an antidote for Cogentin;

q.   Failing to inform EMS personnel decedent was on Cogentin which would have enabled EMS to render appropriate treatment therefore;

r.   Any other negligence and/or omission which may be revealed during the course of discovery.

55.   That as a direct and proximate result of the negligence, gross negligence, wanton and/or willful misconduct and unskilled acts and omissions of Defendants, and each of them, Plaintiff's decedent suffered serious injuries and damages which include, but are not limited to:

a.   Excruciating pain and suffering, including emotional anguish and trauma, past, present and future, associated with Plaintiff's decedent receiving improper medical care and/or treatment as outlined above;

b.   Medical and hospital expenses incurred, past, present, and future, as a result of receiving improper medical care and/or treatment as outlined above;

c.   Loss of wages, past, present and future;

d.   Death;

e.   Hyperthermia;

f.   All other injuries or damages allowed pursuant to MCLA 600.2922 et seq,; and

g.   All other injuries or damages revealed during the course of discovery.

11

**WHEREFORE,** Plaintiff, LEANN TERRANCE, as Personal Representative for the Estate of EVERETT L. TERRANCE, Deceased, respectfully requests that this Honorable Court enter its judgment in favor of Plaintiff and against Defendants jointly and severally, in an amount in excess of TEN THOUSAND DOLLARS ($10,000.00), plus costs, interest and attorney fees.

## COUNT II

### PREMISES LIABILITY: PUBLIC BUILDING DEFECT<br>NEGLIGENCE AND/OR GROSS NEGLIGENCE<br>OF DEFENDANTS NORTHVILLE HOSPITAL<br>AND MICHIGAN

56.     Plaintiff hereby realleges each and every allegation contained in Paragraphs 1 through 55 as if same were fully set forth herein.

57.     That on July 31, 1995, Defendant MICHIGAN and NORTHVILLE HOSPITAL were in possession and control of the premises of Defendant NORTHVILLE HOSPITAL, located in the city of Northville, County of Wayne, State of Michigan.

58.     That the Defendant NORTHVILLE HOSPITAL was in a dangerous condition in that extreme heat was permitted to accumulate within the premises, imposing a hazardous and dangerous condition to the patients therein.

59.     That one of the causes of said extreme and excessive heat was due to maintenance being performed on the building's steam pipes, necessitating the removal of the pipe's insulation, causing additional and unnecessary heat to be compounded to that already imposed by outdoor temperatures in excess of 100 degrees.

12

60. That another cause of said extreme and excessive heat was due to the Defendants' failure to provide adequate air conditioned and/or ventilated rooms in which patients at risk for heat stroke could rest during spells of hot weather.

61. That the Defendant NORTHVILLE HOSPITAL and Defendant STATE OF MICHIGAN breached the following duties to exercise reasonable care in the maintenance of their premises including but not limited to the following:

     a.    Failure to maintain a reasonably safe and healthy hospital environment in violation of MCLA 691.1406;

     b.    Failure to repair and maintain a public building under their control when open or use by members of the public in violation of MCLA 691.1406;

     c.    Failure to properly repair and/or replace the hospital's heating/cooling system when it became clear that the system was creating a dangerous hospital environment for members of the public, and patients in particular in violation of MCLA 691.1406.

     d.    Failure to ameliorate the effects of the intense heat following the inappropriate and improper maintenance of the building's heating/cooling system in violation of MCLA 691.1406;

     e.    Failing to provide adequate air conditioned and/or ventilated rooms in which patients at risk for heat stroke could rest during spells of hot weather.

     f.    Any and all other breaches discovered through the course of litigation.

62. That as a direct and proximate result of Defendants STATE OF MICHIGAN and NORTHVILLE HOSPITAL's negligence and/or gross negligence Plaintiff's decedent suffered several injuries, including but not limited to:

     a.    Excruciating pain and suffering, including emotional anguish and trauma, past, present and future, associated with Plaintiff's decedent receiving improper medical care and/or treatment as outlined above;

FEGER, FEGER, KENNEY & JOHNSON • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2480 • TELEPHONE 248-355-5555 • FAX 248-355-5333

13

b.  Medical and hospital expenses incurred, past, present, and future, as a result of receiving improper medical care and/or treatment as outlined above;

c.  Loss of wages, past, present and future;

d.  Death;

e.  Hyperthermia;

f.  All other injuries or damages allowed pursuant to MCLA 600.2922 et seq,; and

g.  All other injuries or damages revealed during the course of discovery.

**WHEREFORE,** Plaintiff, LEANN TERRANCE, as Personal Representative for the Estate of EVERETT L. TERRANCE, Deceased, respectfully requests that this Honorable Court enter its judgment in favor of Plaintiffs and against Defendants jointly and severally, in an amount in excess of TEN THOUSAND DOLLARS ($10,000.00), plus costs, interest and attorney fees.

## COUNT III

### VIOLATION OF PLAINTIFF'S DECEDENT'S CIVIL RIGHTS UNDER 42 USC 1983 COMMITTED BY ALL INDIVIDUAL DEFENDANTS

63.  Plaintiff hereby realleges each and every allegation contained in Paragraphs 1 through 62 as if same were fully set forth herein.

64.  That as an involuntarily committed psychiatric patient to Defendant Northville's psychiatric facility, Plaintiff's Decedent was completely dependent upon the Defendant facility's hospital personnel, including the individual defendants, for necessary medical attention.

14

65.     That Plaintiff's Decedent, while involuntarily confined to Defendant Northville's premises, was entitled to have his physical and psychological needs met, including medical care reasonably designed to meet his routine and emergency health care needs.

66.     That on July 31, 1995, as described above, Plaintiff's medical condition and medical needs were serious in that they were diagnosed by a physician as mandating treatment and/or were so obviously in need of treatment that even a lay person would easily recognize the necessity for a doctor's attention.

67.     That the above described conduct of the individual defendants on July 31, 1995, amounted to a deliberate indifference to Plaintiff's Decedent's serious medical needs, and thus amounted to a violation of Plaintiff's Decedent's civil rights as defined and guaranteed under 42 USC 1983.

68.     That as a direct and proximate result of the individual defendants violating Plaintiff's Decedent's civil rights, Plaintiff's decedent suffered several injuries, including but not limited to:

a.      Excruciating pain and suffering, including emotional anguish and trauma, past, present and future, associated with Plaintiff's decedent receiving improper medical care and/or treatment as outlined above;

b.      Medical and hospital expenses incurred, past, present, and future, as a result of receiving improper medical care and/or treatment as outlined above;

c.      Loss of wages, past, present and future;

d.      Death;

e.      Hyperthermia;

f.      All other injuries or damages allowed pursuant to MCLA 600.2922 et seq,; and

15

g.    All other injuries or damages revealed during the course of discovery.

**WHEREFORE,** Plaintiff, LEANN TERRANCE, as Personal Representative for the Estate of EVERETT L. TERRANCE, Deceased, respectfully requests that this Honorable Court enter its judgment in favor of Plaintiffs and against Defendants jointly and severally, in an amount in excess of TEN THOUSAND DOLLARS ($10,000.00), plus costs, interest and attorney fees.

Respectfully submitted,

**FIEGER, FIEGER, KENNEY & JOHNSON, P.C.**

GEOFFREY N. FIEGER (P30441)
TODD J. WEGLARZ (P48035)
Attorneys for Plaintiff
19390 W. Ten Mile Road
Southfield, MI 48075-2463
(248) 355-5555

Date: April 3, 2003

16

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

LEANN TERRANCE, as Personal Representative
for the Estate of EVERETT L. TERRANCE, Deceased

    Plaintiff,

                             Case No: 99-CV-74433-DT
v.                            HON: Lawrence P. Zatkoff

NORTHVILLE REGIONAL PSYCHIATRIC HOSPITAL,
MICHIGAN DEPARTMENT OF MENTAL HEALTH,
H. BLANDA, M.D., ARDESHIR EMANI SAID, M.D.,
O.R. LEE, M.D., DR. SADASIVAN, M.D, SHIRLEY OWENS, R.N.,
B. FANNING, O.T., DR. NAIR, DR. KIM, DR. PAN, and
DR. ALMASI, Jointly and Severally,

    Defendants.

FILED

---

GEOFFREY NELS FIEGER (P30441)    MARGARET A. NELSON (P30342)
TODD J. WEGLARZ (P48035)    Attorney for Defendants
Attorneys for Plaintiff    Assistant Attorney General
FIEGER, FIEGER, KENNEY & JOHNSON, P.C.    Mental Health Division
19390 W. Ten Mile Rd.    P.O. Box 30736
Southfield, MI 48075    6520 Mercantile Way #1
(248) 355-5555    Lansing, MI 48910
    (517) 373-6434

---

### RE-DEMAND FOR JURY TRIAL

NOW COMES Plaintiff herein, LEANN TERRANCE, as Personal Representative of the Estate of EVERETT L. TERRANCE, Deceased, by and through his attorneys, FIEGER, FIEGER, KENNEY & JOHNSON, P.C., and hereby relies upon his previous request for a trial by jury in the above-captioned matter.

17

Respectfully submitted,

**FIEGER, FIEGER, KENNEY & JOHNSON, P.C.**

GEOFFREY N. FIEGER (P30441)
TODD J. WEGLARZ (P48035)
Attorneys for Plaintiff
19390 W. Ten Mile Road
Southfield, MI 48075-2463
(248) 355-5555

Date: April 3, 2003

18

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**F I L E D**

**MAR 1 2 2003**
CLERK'S OFFICE
U. S. DISTRICT COURT
EASTERN MICHIGAN

EUGENE TERRANCE, as Personal
Representative of EVERETT L.
TERRANCE, Deceased,

               Plaintiff,

v.

NORTHVILLE REGIONAL PSYCHIATRIC
HOSPITAL, MICHIGAN DEPARTMENT
OF MENTAL HEALTH, H. BLANDA, M.D.,
ARDESHIR EMANI SAID, M.D., and
SHIRLEY OWENS, R.N., Jointly and
Severally,

               Defendants.

CASE NO. 99-74433
HON. LAWRENCE P. ZATKOFF

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Detroit, State of Michigan, on

# 1 2 MAR 2003

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
CHIEF UNITED STATES DISTRICT JUDGE

This matter is before the Court on Plaintiff's (1) Motion for Leave to File Amended

Complaint; and (2) Plaintiff's Motion to Disqualify Presiding Judge. The Defendants have filed an

objection to Plaintiff's Motion to Disqualify Presiding Judge. The Court finds that the facts and

legal arguments are adequately presented in the parties' briefs and that the decisional process would

not be significantly aided by oral argument. Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is

hereby ORDERED that the motions be resolved on the briefs submitted. For the reasons set forth

below, Plaintiff's Motion for Leave to File First Amended Complaint is GRANTED and Plaintiff's

Motion to Disqualify Presiding District Court Judge is DENIED.

## A. Motion to Disqualify Presiding District Court Judge

Plaintiff has filed a Motion to Disqualify Presiding District Court Judge. Plaintiff's law firm

recently hired Lloyd G. Johnson as an associate attorney. Mr. Johnson was also Grossedale Ingleside

Park's attorney in litigation Chief Judge Zatkoff brought against Grossedale Ingelside Park in an

individual capacity. Based upon this representation, Plaintiff requests that Chief Judge Zatkoff

disqualify himself pursuant to 28 U.S.C. § 455(a) and Judicial Canon 2A. 28 U.S.C. § 455(a) states

that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any

proceeding in which his impartiality might reasonably be questioned." Judicial Canon 2A states that

"a judge should respect and comply with the law and should act at all times in a manner that

promotes public confidence in the integrity and impartiality of the judiciary." This same situation

occurred last year also, in the case of *Integrated Drives v. Nordic Gear*, Case No. 02-70399. In

*Integrated Drives*, Judge Friedman granted plaintiff's Motion to Disqualify, and in relying upon §

455(a) and Judicial Canon 2A stated:

> The ruling [to disqualify] is limited to the time during which Chief Judge
> Zatkoff's litigation against Ingleside Grossedale Park Association continues and
> Lloyd G. Johnson serves as Ingleside Grossedale Park Association's counsel. Once
> the litigation between these parties reaches a final resolution, or once Lloyd G.
> Johnson ceases to serve as counsel for Ingleside Grossedale Park Association, the
> need for disqualification will no longer exist.

*See* Order of March 11, 2002, *Integrated Drives v. Nordic Gear*, Case No. 02-70399 (Friedman, J.).

In the present case, however, as pointed out by Defendants' counsel in their response brief,

the litigation between Ingleside Grossedale Park Association and Chief Judge Zatkoff is now over.

Therefore, and in accordance with Judge Friedman's analysis in *Integrated Drives*, there is no longer any reason for Chief Judge Zatkoff to disqualify himself.   Accordingly, Plaintiff's Motion to Disqualify Presiding District Court Judge is DENIED.

## B.  Motion for Leave to File Amended Complaint

Plaintiff has also filed a Motion for Leave to File Amended Complaint.  Plaintiff seeks to substitute Leann Terrance, the sister of the decedent, for Eugene Terrance, as Personal Representantive of the decedent, pursuant to the recent appointment of Leann Terrance as Personal Representative by the Wayne County Probate Court.  Pursuant to FED. R. CIV. P. 15(a), leave to amend a complaint shall be freely given when justice so requires.  Defendant not having objected, the Court finds this to be one of those circumstances.  Accordingly, Plaintiff's Motion for Leave to File Amended Complaint is GRANTED.

In conclusion, Plaintiff's Motion to Disqualify Presiding District Court Judge is DENIED, and Plaintiff's Motion for Leave to File Amended Complaint is GRANTED.

IT IS SO ORDERED

Date: __1 2 MAR 2003__

LAWRENCE P. ZATKOFF
CHIEF UNITED STATES DISTRICT JUDGE

A TRUE COPY
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
BY

Pursuant to Rule 77 (d), FRCivP
COPIES HAVE BEEN MAILED TO THE
FOLLOWING:
Geoffrey Fieger, Esq.
Margaret A. Nelson, Esq.

on __1 2 MAR 2003__

DEPUTY CLERK

3