UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEANN TERRANCE, as Personal Representative
for the Estate of Everett L. Terrance, deceased,

    Plaintiff,

v

NORTHVILLE REGIONAL PSYCHIATRIC
HOSPITAL; MICHIGAN DEPARTMENT OF
MENTAL HEALTH; H. BLANDA, M.D.; ARDESHIR
EMANI SAID, M.D.; O.R. LEE, M.D.; DR. SADASIVAN,
M.D.; SHIRLEY OWENS, R.N.; B. FANNING, O.T.;
DR. NAIR; DR. KIM; DR. PAN; and, DR. ALMASI, jointly
and severally,

    Defendants.
_____/

Case No. 99-CV-74433-DT

Lower Court #97-718312-NH

Hon. Lawrence P. Zatkoff

GEOFFREY N. FEIGER (P30441)
TODD J. WEGLARZ (P48035)
Attorneys for Plaintiff
19390 W. Ten Mile Road
Southfield, MI 48075
(248) 355-5555
_____

MARGARET A. NELSON (P30342)
KAREN K. KUCHEK (P46200)
Attorneys for Defendants
Public Employment, Elections & Tort Division
P. O. Box 30736
Lansing, MI 48909-8236
(517) 373-6434
_____/

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO
DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT**

I.      **This Court may consider issues not decided by the Sixth Circuit Court of Appeals.**

A second motion for summary judgment is appropriate and necessary because the Sixth Circuit Court of Appeals: ruled that the lower court should have analyzed the facts under the Fourteenth Amendment; and, never analyzed the protection of qualified immunity for individual Defendants under the Fourteenth Amendment.

Plaintiff erroneously believes that the "law of the case" doctrine requires this Court to proceed to trial without analysis of whether there are material facts to support Plaintiff's claim under the Fourteenth Amendment, and without analysis of whether there are material facts to deny qualified immunity for individual Defendants. Plaintiff relies upon *United States v Campbell*, 168 F3d 263, 265 (CA 6, 1999), to support her argument that "…the mandate rule is a specific application of the law-of-the case doctrine." However, the trial court "may consider those issues not decided expressly or impliedly by the appellate court…." *Quern v Jordan*, 440 US 332, 347 n18; 99 S Ct 1139; 59 L Ed 2d 358 (1979).

> The law of the case doctrine is not a mandate but is instead subject to three "extraordinary" exceptions: (1) subsequent to the issuance of the prior decision, substantially different evidence is presented; or (2) a contrary view of the law is issued by a controlling authority; or (3) the prior decision is clearly erroneous or would create a manifest injustice if allowed to stand. *Craft v United States*, 233 F3d 358, 363-364 (CA 6, 2000).

Here, since the Sixth Circuit did not address the required Fourteenth Amendment analysis and the legal question of qualified immunity, Defendants are entitled to the second motion for summary judgment. Additionally, controlling authority impacts the decision in *Terrance v Northville Regional Psychiatric Hosp*, 286 F3d 834 (CA 6, 2002). Further, as argued below, the prior ruling is clearly erroneous in its application of the Eighth Amendment to this case.

A.      **Eighth Amendment**

The Sixth Circuit did remand Plaintiff's Eighth Amendment claim against four Defendants to this Court for trial with instructions to determine whether they had a deliberate indifference to Terrance's serious medical needs. The appellate court was guided by the holding in *Waldrop v Evans*, 871 F2d 1030 (CA 11, 1989), where the Eleventh Circuit described the rights of a prison inmate who was provided grossly inadequate medical care. It was appropriate for the court in *Waldrop* to analyze that case under the Eighth Amendment because the treatment

a prisoner receives in prison, and the conditions under which he is confined, are subject to scrutiny under the Eighth Amendment. *Farmer v Brennan*, 511 US 825; 114 S Ct 1970 (1974). The *Waldrop* case is, however, not applicable in *Terrance*.

The appropriate standard of culpability must be analyzed under the standard appropriate to the specific, applicable provision of the Constitution. Here, as the U. S. Supreme Court held in *Youngberg v Romeo*, 457 US 307; 102 S Ct 2452; 73 L Ed 2d 28 (1982), and the Sixth Circuit echoed throughout its opinion in *Terrance*, it is the Fourteenth Amendment, not the Eighth Amendment, which guides this case.

> Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that amendment...must be the guide for analyzing these claims. *Graham v Connor*, 490 US 386, 395; 109 S Ct 1865; 104 L Ed 2d 443 (1989).

Relying upon the holding in *Graham*, the United States Supreme Court later explained that if a constitutional claim is "covered by" a particular amendment, it is inappropriate to use a different amendment for analysis of the claim. *County of Sacramento v Lewis*, 523 US 833; 118 S Ct 1708; 140 L Ed 2d 1043 (1998). Thus, the appellate court in *Terrance* did not have the luxury of remanding an Eighth Amendment claim when the Fourteenth Amendment guides the standard appropriate for determining the constitutional rights of a person involuntarily committed to a mental facility. Dismissal of the Eighth Amendment claim here should have been affirmed.

Therefore, Defendants renew their request to grant summary judgment to the four Defendants remanded on this Eighth Amendment claim inasmuch as the United States Supreme Court has a contrary view of the controlling law, and the Sixth Circuit Court of Appeals' prior decision is clearly erroneous.

### B. Fourteenth Amendment

After the Sixth Circuit Court of Appeals issued an opinion in this case, it decided *Ewolski v City of Brunswick*, 287 F3d 492 (CA 6, 2002) -- a substantive due process claim under the Fourteenth Amendment. There, when analyzing the "deliberate indifference" standard to impose liability on state actors, the *Ewolski* court relied upon the *Lewis* court's repeated instruction that

2

"the Fourteenth Amendment protects only against abuse of executive power which "shocks the conscience." The court in *Ewolski* went on to explain that the "shocks the conscience" standard is "no calibrated yard stick," and the "critical question in determining the appropriate standard of culpability is whether the circumstances allowed the state actors time to fully consider the potential consequences of their conduct." *Ewolski*, 509-510. After all, Fourteenth Amendment liability only attaches to "conduct <u>intended</u> to injure...." *Lewis*, 849 (emphasis added).

> [W]hen unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates "the large concerns of the governors and the governed." *Ewolski*, 511, quoting *Lewis*.

In *Ewolski*, the court determined that a five-hour delay to initiate a tactical solution, followed by several more hours before making a decision, was a situation "where actual deliberation was practical." Nevertheless, there was no evidence to suggest that the state actors demonstrated an intent to injure anyone, and summary judgment was appropriate. Here, on the other hand, only one hour is at issue with the treatment of Terrance. He was first observed staggering in the hallway (at about 1:30 p.m.). *Terrance*, 840. Defendants did not, at first, know that Terrance was in need of emergency medical treatment. Even though it may have taken Dr. Said an hour to arrive at the ward, Terrance's symptoms were nothing new. Terrance frequently was confused, non-responsive, uncooperative, drank a lot of water for a dry-mouth, and complained of feeling weak. *Terrance*, 838-839. Additionally, at the outset, Terrance denied any problem.

Dr. Said was at first called by a social worker to treat Terrance; based upon the call, Dr. Said believed Terrance was exhibiting characteristics of hypoglycemia, so he instructed the caller to get blood sugar. Sometime later, Dr. Said was paged "STAT." [See Brief in Support of Defendants' Motion for Summary Judgment, Attachment K, pp 52-55.] In the meantime, other Defendants took precautionary measures. When Dr. Said arrived (possibly as much as an hour after he received the first call), he began emergency treatment. Unfortunately, as Dr. Said attempted other emergency measures, he was advised that supplies were missing (equipment and ice to administer an ice water enema, rectal thermometer, the drug Dantrolene to treat

3

hyperthermia), so the Emergency Medical Services (EMS) was called at 2:32 p.m. *Terrance*, 840. Not only was it not practical to employ the deliberation explained in *Ewolski*, once Defendants drew the necessary inference, there is nothing to indicate that any Defendant acted with an intent to harm Terrance.

In July 2002, the Sixth Circuit decided *Sperle v Michigan Dep't of Corrections*, 297 F3d 483 (CA 6, 2002) -- another case involving the alleged deprivation of substantive due process guaranteed by the Fourteenth Amendment. The court in *Sperle*, relying upon *Lewis*, states:

> The key factor in custodial environments and other situations where deliberate indifference renders state actors liable for substantive due process violations is the ability of the officials to consider their actions in an unhurried, deliberative manner. *Sperle*, 492.

There, a female employee was murdered by an inmate. That record permitted the inference that: the warden was unresponsive to another inmate's warning of a plan to murder the employee; a corrections officer observed the employee and inmate arguing the month prior to the murder but took no subsequent action; the employee was never given a personal protection device that enables employees to alert guards of an emergency; and, in violation of policy, the inmate was unsupervised for about 55 minutes, during which time the murder occurred. Nevertheless, the court concluded that the defendants did not act with the degree of culpability necessary to hold them liable for a substantive due process violation -- they did not engage in arbitrary conduct intentionally designed to punish someone.

The deliberate-indifference standard first requires that: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 US at 837. The definitional test does not stop there. "Once the state actor draws the necessary inference, 'the official must act or fail to act in a manner demonstrating reckless or callous indifference toward the individual's rights'." *Sperle*, 493.

Applying this standard warrants the conclusion that Defendants were not deliberately indifferent and their conduct does not "shock the conscience" in a sufficiently culpable manner. Once Defendants observed Terrance at 1:30, they immediately began some treatment, although,

4

based upon Terrance's prior conduct, they could not draw the inference that he was in substantial risk of serious harm. Dr. Said drew the necessary inference upon his arrival in the dayroom when he observed Terrance; then, he acted with a sense of urgency to alleviate the serious harm. Although an absence of supplies in the ward may indicate negligence on the part of some employee, it does not establish culpability on the part of Dr. Said, or any Defendant.

### C. Qualified Immunity

No court has analyzed the individual Defendants' qualified immunity protection under the Fourteenth Amendment. In granting Defendants' first motion for summary judgment, this Court utilized standards under the Eighth Amendment. The appellate court in *Terrance* remanded the case to this Court because "the lower court has not yet considered the decedent's due process rights under this standard." *Terrance*, 850. Indeed, the United States Supreme Court in *Graham*, *Lewis*, and *Youngberg* requires an analysis of this case under the Fourteenth Amendment, only; hence, it is that constitutional provision which governs the Defendants' qualified immunity protection.

### II. NRPH and Michigan Department of Mental Health are improper parties.

Plaintiff's response did not oppose Defendants' arguments on this issue. Therefore, summary judgment is warranted.

### CONCLUSION

Defendants renew their request for the relief requested in their second motion for summary judgment.

Respectfully submitted,

MICHAEL A. COX
Attorney General

*/s/ Karen K. Kuchek*
Margaret A. Nelson
Karen K. Kuchek
Assistant Attorney General
Dated: April 16, 2003    Attorney for Defendants
1999056841/reply

5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEANN TERRANCE, as Personal Representative
for the Estate of Everett L. Terrance, deceased,

    Plaintiff,

v

Case No. 99-CV-74433-DT

NORTHVILLE REGIONAL PSYCHIATRIC
HOSPITAL; MICHIGAN DEPARTMENT OF
MENTAL HEALTH; H. BLANDA, M.D.; ARDESHIR
EMANI SAID, M.D.; O.R. LEE, M.D.; DR. SADASIVAN,
M.D.; SHIRLEY OWENS, R.N.; B. FANNING, O.T.;
DR. NAIR; DR. KIM; DR. PAN; and, DR. ALMASI, jointly
and severally,

Lower Court #97-718312-NH

Hon. Lawrence P. Zatkoff

    Defendants.
_____/

GEOFFREY N. FEIGER (P30441)
TODD J. WEGLARZ (P48035)
Attorneys for Plaintiff
19390 W. Ten Mile Road
Southfield, MI 48075
(248) 355-5555

FILED 2003 APR 18 P 1:09
U.S. DIST. COURT CLERK
EAST. DIST. MICH.
DETROIT

MARGARET A. NELSON (P30342)
KAREN K. KUCHEK (P46200)
Attorneys for Defendants
Public Employment, Elections & Tort Division
P. O. Box 30736
Lansing, MI 48909-8236
(517) 373-6434
_____/

## PROOF OF SERVICE

On the date below, I sent by first class mail a copy of Defendants' Reply to Plaintiff's

Response to Defendants' Second Motion for Summary Judgment to:

Geoffrey N. Fieger
Todd J. Weglarz
19390 W. Ten Mile Road
Southfield, MI 48075

I declare that the statements above are true to the best of my information, knowledge, and belief.

Date: *April 16, 2003*          */s/ Susan R. Swanson*
                                 Susan R. Swanson